UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER SANTIAGO-MARTINEK, <br><br> Plaintiff, <br> v. <br><br> SIMPLIVERIFIED, LLC, <br><br> Defendant. | Case No.: 6:24-cv-00104 <br><br> **COMPLAINT AND JURY DEMAND** |

# COMPLAINT

Christopher Santiago-Martinek ("Plaintiff") by and through his counsel brings the following Complaint against Simpliverified, LLC., ("Defendant" or "Simpliverified") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*, arising out of employment background check reports that Defendant published to Plaintiff's potential employers, which falsely portrayed Plaintiff as a ***convicted felon***.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from

its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff had been convicted of *felony* aggravated assault. Finally, Defendant published that there was a pending traffic violation associated with Plaintiff for Title Registration and Certification failure.

4. Defendant's reporting is grossly inaccurate and untrue.

5. Plaintiff has never been convicted of a felony in his life.

6. Further, both records are from Pennsylvania, Plaintiff has never lived in or been charged with a crime in Pennsylvania.

7. Plaintiff's prospective employer rescinded Plaintiff's job offer after receiving Defendant's employment background check report, which included the inaccurate felony conviction and pending traffic violation case, that do not belong to Plaintiff.

8. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Berks County, Pennsylvania regarding the felony conviction and pending traffic violation case prior to publishing the inaccurate information to Plaintiff's prospective employer.

9. Had Defendant performed even a cursory review of the underlying

public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle and last names, Social Security numbers, and even reside in different states.

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12. Defendant's inaccurate reports cost Plaintiff a good paying job and job security, which he needs to make ends meet.

13. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure

maximum possible accuracy based on 15 U.S.C. §1681e(b) of the FCRA.

## PARTIES

15.     Christopher Santiago ("Plaintiff") is a natural person residing in Orlando, Florida, and is a "consumer" as that term is defined in 15 U.S.C. §1681a(c).

16.     Defendant Simpliverified, LLC ("Defendant" or "Simpliverified") is a Florida corporation doing business throughout the United States, including the State of Florida and in this District, and is located at 1192 E. Draper Pkwy, #232, Draper, UT 84020.

17.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18.     Defendant is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. §1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. §1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the ones Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §1681a(d), (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681.

29. Under 15 U.S.C. §1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

33. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

34. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

35. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have

made clear that Defendant was reporting the felony of another unrelated consumer who has a different middle name, last name, Social Security number, and lives in a different part of the country than Plaintiff.

41. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for Jobs with Grade Potential

42. On September 18, 2023, Plaintiff applied for employment with Grade Potential for a tutoring position.

43. The tutoring position was full-time, and Grade Potential was going to pay Plaintiff $27 per hour.

44. On October 6, 2023, Grade Potential extended the job offer to plaintiff for the full-time tutor position which he applied for. The job offer was conditioned upon Plaintiff passing a background check.

45. Plaintiff was very excited at the job opportunity with Grade Potential. Plaintiff had been struggling to find steady employment since approximately April 2023, and felt like a weight had been lifted from his shoulders when he received the offer from Grade Potential.

46. Plaintiff was unconcerned about the background check and believed he would pass without issue.

**Defendant Published an Inaccurate Background Check Report to Grade Potential**

47. Grade Potential contracted with Defendant to conduct background checks, including criminal background checks, on their prospective employees.

48. On October 6, 2023, Grade Potential ordered a criminal background check on Plaintiff from Defendant.

49. On October 6, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Grade Potential.

50. Within the employment report, Defendant published inaccurate information about Plaintiff.

51. Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing felony conviction and a pending traffic violation case From Berks County, Pennsylvania, which do not belong to Plaintiff, and appear in the employment report as follows:

```
RESULTS            Records Found
NAME SEARCHED      SANTIAGO-COLON, CHRISTOPHER      SEARCH DATE    10-06-2023 4:15 PM MDT
DOB SEARCHED       08-16-XXXX                       SEARCH SCOPE   7 Years
JURISDICTION       PA-BERKS

                                    *** Abstract ***

NAME ON RECORD     Christopher Zachary Santiago-Colon     CASE NUMBER    CP-06-CR-0003478-2016
DOB ON RECORD      XXXX-08-16                             COURT          PA; Berks County Common Pleas
OTHER IDENTIFIERS  Address: Reading, PA 19611             FILE DATE      2016-07-29
OTHER INFO

                                          Count
TYPE               FELONY                 OFFENSE         AGGRAVATED ASSAULT
DISPOSITION        Disposition:           GUILTY PLEA
DISPOSITION DATE   2016-10-11             OFFENSE DATE    2016-06-11
SENTENCE
OTHER INFO         Arresting Agency:      Berks County
COMMENT            Statute: 18 § 2702 §§ A1

                                    *** Abstract ***
NAME ON RECORD     Christopher Zachary Santiago-Colon     CASE NUMBER    MJ-23106-TR-0005312-2022
DOB ON RECORD      XXXX-08-16                             COURT          PA; Magisterial District
OTHER IDENTIFIERS  Address: Reading, PA 19601             FILE DATE      2022-11-17
OTHER INFO         ***ACTIVE CASE***

                                          Count
TYPE               SUMMARY                OFFENSE         REGISTRATION AND CERTIFICATE OF
                                                          TITLE REQUIRED
DISPOSITION        Disposition:           PENDING
DISPOSITION DATE                          OFFENSE DATE
SENTENCE           Other Sentence Details:  11/17/2022 Traffic Citation Filed
OTHER INFO         Arresting Agency:      Berks County
COMMENT
```

52. The *felony* aggravated assault and pending traffic citation from Berks County, Pennsylvania reported by Defendant about Plaintiff to Grade Potential ***do not*** belong to Plaintiff.

53. Plaintiff has never been charged with or convicted of a felony in his life.

54. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male, Christopher Zachary Santiago-Colon ("Convicted Felon Colon").

55. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the criminal convictions, it would have seen obvious discrepancies between Convicted Felon Colon and Plaintiff.

56. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Colon include the following:

 (a) Plaintiff has never resided in Berks County, Pennsylvania, which is confirmed and clearly indicated on the face of the subject employment report, yet the underlying public court records regarding the criminal conviction and pending traffic citation indicate that Convicted Felon Colon resided in Berks County, Pennsylvania at the time he committed the offenses;

 (b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is different than that of Convicted Felon Colon;

 (c) Convicted Felon's Colon's last name is "Santiago-Colon,"

whereas Plaintiff's last name is "Santiago-Martinek"; and,

(d) Convicted Felon's middle name is "Zachary" whereas Plaintiff does not have a middle name.

57. The sole reason Convicted Felon Colon's records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

58. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal *felony* conviction and pending traffic violation from Berks County, PA belonged to an unrelated individual with a different middle name, last name, Social Security Number, and who resides in a different State than Plaintiff.

59. In preparing and selling consumer reports about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. §1681e(b).

### Grade Potential Denies Plaintiff's Job Application

60. On or about October 6, 2023, Grade Potential notified Plaintiff that his job offer was withdrawn as a direct result of the inaccurate information reported by Defendant.

61. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction and pending traffic violation of another, namely Convicted Felon Colon, were published in the employment report Defendant sold about Plaintiff to Grade Potential.

62. Plaintiff contacted Grade Potential and informed them that he is not Convicted Felon Colon Plaintiff explained that the serious criminal conviction and pending traffic violation from Berks County, PA of Convicted Felon Colon do not belong to him.

63. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Colon's serious criminal convictions reported on Plaintiff's employment report in relation to the Grade Potential position but also on future employment applications.

64. Specifically, Defendant matched Plaintiff and Convicted Felon Colon with little more than their first name and date of birth and published the criminal record and pending traffic violation of Convicted Felon Colon onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Grade Potential, but Defendant failed to perform even a cursory review of such information.

65. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Grade Potential formed a negative opinion about Plaintiff and/or moved on to other candidates.

66. Defendant's inaccurate report cost Plaintiff a promising, well-paying job with Grade Potential, at a time of dire need for Plaintiff.

67. The position with Grade Potential was full-time and Plaintiff was going to earn $27.00 per hour.

68. More importantly, Plaintiff was excited to work with Grade Potential because he was qualified to successfully perform the work and was passionate about the field.

69. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff was unable to find full-time work on par with the Grade Potential job offer.

70. Plaintiff continues to struggle financially but also fears submitting any other job applications due to Defendant's inaccurate reporting here.

71. To make ends meet during this difficult time, Plaintiff assists with construction jobs when they are available, however, the construction jobs do not provide Plaintiff with steady income.

72. Furthermore, Plaintiff has been forced to exhaust his savings. Plaintiff also has a young child that he is partially responsible for. His financial difficulties

have caused further strain with Plaintiff and his child's mother.

73. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

74. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

77. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

78. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

79. At all times pertinent hereto, the above-mentioned employment reports each was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

80. Defendant violated 15 U.S.C. §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment reports it sold about Plaintiff as well as the information it published within the same.

81. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

82. Defendant willfully violated 15 U.S.C. §1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

83. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681*o*.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 18th day of January 2024.

By: */s/Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorney for Plaintiff*
*Christopher Santiago-Martinek*